OPINION
{¶ 1} In June of 1999, appellant Ira F. Wolverton was released from prison. Shortly thereafter, he began a relationship with Leesa VanMeter. Several months after they began dating, appellant moved into VanMeter's home. VanMeter's three minor children also lived in the home, including Jazmin Barrone, who was twelve years old at the time. After moving into the residence, appellant began to act as the child-care provider for the children during the evenings when VanMeter was at work.
 {¶ 2} In November of 1999, the Guernsey County Children's Services Board received an allegation that appellant was sexually molesting Jazmin. A case worker visited Jazmin at school, and interviewed her regarding the allegation. Jazmin denied that appellant was engaging in sexual activity with her. She claimed that she had spoken with a friend about a matter concerning another friend, and the story had been misconstrued. When confronted, appellant claimed Jazmin was lying.
 {¶ 3} Appellant continued caring for the children while VanMeter was at work. During this time period, appellant forced Jazmin to engage in sexual relations with him. She complied with his demands because she was afraid of him, and he threatened her and her family if she refused, or if she revealed the activity to anyone.
 {¶ 4} In August of 2000, appellant convinced VanMeter that Jazmin was sexually active, and that they should take her to a doctor to put her on birth control. Through testing conducted by the doctor, it was determined that Jazmin was infected with a sexually transmitted disease called Trichomonas Vaginalias, commonly referred to as "Tric." Appellant had the same sexually transmitted disease. VanMeter, who had ceased sexual relations with appellant sometime prior to this, did not test positive for the disease. The disease may be transmitted only through sexual contact, and not through common use of a towel, wash cloth, toilet seat, or vibrator.
 {¶ 5} Also in August of 2000, VanMeter was admitted to the hospital for several days. During that time period, an image of a young female in the nude was created using VanMeter's computer and camera. The female was later identified by VanMeter and by Jazmin as being Jazmin Barrone. In the photograph, the hand of a darker skinned male is visible touching the buttocks and vagina of the child. Jazmin identified the hand as that of appellant. While her mother was hospitalized, appellant forced Jazmin to perform sex acts in her mother's bed, and recorded the acts on her computer.
 {¶ 6} Appellant was indicted on two counts of rape and one count of pandering obscenity involving a minor. The case proceeded to jury trial in the Guernsey County Common Pleas Court. Following trial, appellant was convicted on all three counts. Following a hearing, the court found appellant to be a sexual predator and a repeat violent offender. He was sentenced to ten years incarceration for each count of rape, and an additional ten years for each repeat violent offender specification attached to the rape convictions. He was sentenced to five years incarceration for pandering obscenity. The prison sentences were imposed consecutively, for a total of forty-five years incarceration.
 {¶ 7} Appellant assigns a single error on appeal:
 {¶ 8} "In violation of due process, mr. wolverton was found guilty of rape. when such a finding is against the manifest weight of the evidence."
 {¶ 9} Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. The court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way, and created such a manifest miscarriage of justice that the conviction must be reversed. Id. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. Id.
 {¶ 10} Jasmine testified that appellant forced her to have both vaginal and oral sex with him. She testified that he threatened her and her family if she told anyone, or if she refused. She also testified that when her mother was in the hospital, appellant took her into her mother's bedroom, and engaged in oral sex with her while recording it using the camera on her mother's computer. She testified that he also touched her while the camera was recording, and later made her watch the recording. She testified that he used her mother's vibrator on her. Jazmin testified that appellant had her say things to him while he was having sex with her, such as, "Stop, Daddy." The State also presented evidence that both Jazmin and appellant tested positive for the same sexually transmitted disease. Both Jazmin and her mother identified the image of a young female in the nude, created with the computer camera, as Jazmin. In addition, the State presented testimony from a neighbor, who testified that he observed appellant place his hand on Jazmin's breast while seated on the couch in the VanMeter residence. The neighbor testified that Jazmin attempted to pull away.
 {¶ 11} Appellant presented evidence that during her relationship with appellant, VanMeter was engaged in an intimate relationship with Danny Kent. Appellant presented the testimony of several witnesses who claimed that VanMeter told them that while appellant was sleeping on the couch in her house, she and Kent engaged in sexual intercourse on the pool table in the basement. These witnesses further testified that Kent and VanMeter were conspiring to get appellant "out of the picture" so they could be together. Ronnie Masters, appellant's first cousin, testified that he overheard Kent and VanMeter discuss getting appellant returned to prison on a parole violation. However, while several witnesses testified that Kent and Van Meter were conspiring to get appellant out of the house, there was no direct testimony that they specifically planned to accomplish this goal by having Jazmin fabricate a story concerning sexual involvement with appellant. Further, most of the witnesses who testified on appellant's behalf were his family members.
 {¶ 12} This is not the exceptional case in which the evidence weighs so heavily against conviction as to require reversal. The judgment is not against the manifest weight of the evidence. The assignment of error is overruled.
 {¶ 13} The judgment of the Guernsey County Court of Common Pleas, is affirmed.
By Gwin, P.J., Farmer, J., and Wise, J., concur.